Hon. Charles A. Zielinski Chairman, New York State Board on Electric Generation Siting and the Environment
This is in response to your letter, dated April 6, 1979, in which you request my opinion as to whether the laws of this State provide adequate authority for the New York State Board on Electric Generation Siting and the Environment (the "Board") to regulate discharges into State waters from new major Federal steam electric generating facilities under the State Pollutant Discharge Elimination System ("SPDES") program and to carry out reporting, monitoring, entry and inspection activities in connection therewith.
Preliminarily, I note that the general question of State authority to regulate Federal facilities with respect to water pollution, and issuance of SPDES permits in connection therewith, was addressed in my opinion dated October 27, 1978 (copy attached), given in response to a request from the State Commissioner of Environmental Conservation. That opinion concluded that Article 17, Title 8 of the Environmental Conservation law ("ECL") and the rules and regulations promulgated thereunder (found at 6 NYCRR 750-757) provide adequate authority for such regulation and the issuance of SPDES permits to Federal facilities.
With respect to major steam electric generating facilities, ECL, § 17-8023 provides that, where a certificate for the construction or operation of such a facility is required under Public Service Law ("PSL"), Article VIII, such certificate shall be applied for and obtained in lieu of the SPDES permit required under ECL, Article 17, Title 8. Section 17-0823 further provides that in such case, all powers conferred upon the Department of Environmental Conservation by Article 17 shall devolve upon the Board, which, in considering the issuance of the aforesaid certificate, shall apply the provisions of Article 17 and the Federal Water Pollution Control Act. Thus, regulatory powers otherwise conferred upon the Department of Environmental Conservation are, in the case of major steam electric generating facilities, conferred upon the Board. Neither ECL, Article 17 nor PSL, Article VIII set forth any exception for Federal facilities.
The New York State Board on Electric Generation Siting and the Environment was created pursuant to the provisions of Article VIII of the PSL, which deals with the licensing of major steam electric generating facilities in the State. Section 140 of the Article defines "major steam electric generating facility" as a steam electric generating facility with a capacity of 50,000 kilowatts or more. Section 141 directs that, on or after January 1, 1979, no person (defined to include any "governmental agency") shall commence the preparation of a site for, or the construction of, a major steam electric generating facility without first obtaining a certificate from the Board in accordance with Article VIII. Such facility is to be built, maintained and operated in conformity with said certificate and any terms, limitations or conditions contained therein. The only pertinent exception to the aforesaid requirements of Article VIII is found at § 141 4. (b), wherein facilities over which the Federal government has exclusive jurisdiction, or has concurrent jurisdiction with that of a state and has exercised such jurisdiction to the exclusion of regulation of such facility by the state, are excluded from the operation of Article VIII.
I therefore conclude that, with respect to new major Federal electric generating facilities (as such facilities are defined in PSL, § 140 [hereinbefore discussed]), the Board, by virtue of its general licensing authority pursuant to PSL, Article VIII, as augmented by ECL, §17-0823, possesses adequate authority to regulate discharges into State waters from such facilities in accordance with the SPDES program set forth in Article 17, Title 8, of the Environmental Conservation Law and the rules and regulations promulgated thereunder, including the reporting, monitoring, inspection and entry activities therein provided for.